[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12637
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-00011-RWG-SMD-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENNIS REINALDO PERALTA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 21, 2020)

Before JILL PRYOR, GRANT and LUCK, Circuit Judges.

PER CURIAM:

Dennis Reinaldo Peralta appeals his conviction for conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).  Peralta raises several challenges to his conviction including whether: (1) the district court abused its discretion in denying his requested jury instruction explaining that speculation, suspicion, or a guess was an insufficient basis for conviction; (2) there was sufficient evidence to support his conviction; and (3) the Middle District of Alabama was a proper venue.  After careful review, and for the reasons below, we affirm.

## I.    BACKGROUND

Peralta was indicted for one count of conspiracy to distribute 50 grams or more of methamphetamine.[1]  The following facts were established at his criminal trial.

The Federal Bureau of Investigation ("FBI") was investigating gang activity involving Bryant Pouncy when they learned that a group, the "Pouncy gang," was distributing methamphetamine in Enterprise, Alabama.  During the investigation the FBI developed a confidential source, May, who worked with the gang's drug supplier, Jose Rubalcava, and was responsible for recruiting new buyers.  Rubalcava, who was based in Mexico, supplied the Pouncy gang with

---

[1] Peralta was indicted alongside eight co-defendants who were charged for participating in the conspiracy as well as other crimes.

methamphetamine, which they picked up in Atlanta and then distributed in Enterprise.  As part of the investigation, the FBI introduced May to a certified undercover employee ("UCE").  May then communicated to Rubalcava that the UCE was interested in buying methamphetamine.  Rubalcava contacted the UCE, and the two agreed that Rubalcava would supply the UCE with  one kilogram of methamphetamine a month, for $10,500 per kilogram.  On the call, Rubalcava informed the UCE that he supplied people in Enterprise and made deliveries of methamphetamine in Atlanta, where he wanted the UCE to pick up the delivery.

The UCE conducted multiple controlled purchases from Rubalcava.  To conduct the transactions, the UCE would contact Rubalcava, who would provide him with a local phone number and a code word.  The UCE would then contact the person at that phone number who was in the Atlanta area and use the code word to set up the methamphetamine delivery.  The first code word was "alazan," which the UCE used to set up a transaction for one kilogram of methamphetamine for $10,500.  The UCE set up a second transaction with Rubalcava, with the code word "lacho," where again the UCE purchased one kilogram of methamphetamine for $10,500.  A third deal was set up by the UCE and Rubalcava, for the same amount and price, with the code word "la rama."  In the third deal, the UCE received a call from Peralta's phone to set up the transaction.  When the UCE arrived at the pick-up location, he got into a Honda Accord, registered to Peralta,

and made a transaction of $10,500 for one kilogram of methamphetamine. The UCE identified Peralta in court as the individual with whom he had completed the transaction.

The Pouncy gang traveled to Atlanta on at least two occasions to pick up methamphetamine. Facebook Messenger records revealed one transaction for two kilograms of methamphetamine for $18,000, and another, where Pouncy was provided a phone number to call with the code word "alazan," for about three kilograms of methamphetamine for $29,000. On both occasions, the transactions occurred in Atlanta via a courier or delivery person.

Records from Western Union revealed that Peralta had sent approximately 95 money transfers. The transfers were connected through his phone number and name. A representative from Western Union testified that all of the transactions were under $1,000—a threshold that would require additional sender information, such as a driver's license. The transactions used an address in the vicinity of Lawrenceville, Georgia, and the majority of the transactions used a Belmont Lane address in Lawrenceville that matched the address listed on Peralta's license. Fifty-five of the transactions were sent to Mexico, for a total of $44,042.77. For these transactions, the following email address was provided, dennisperalta665@yahoo.com.

After the close of the government's case, Peralta moved for a judgment of acquittal, arguing that the government had failed to submit sufficient evidence to connect him to the conspiracy as charged because he was not part of the Pouncy gang and the UCE's identification of him was inadequate.  Peralta further argued that he could not conspire with an agent, the UCE, and that venue was improper because the UCE was his only connection to Alabama; all the transactions occurred in Atlanta.  The district court denied the motion for acquittal and found that the venue issue turned on  a question of fact for the jury to decide.

At trial, Peralta requested a jury instruction on speculation or guesswork, which read:

> If you believe the evidence in this case did nothing more than create a suspicion, a possibility, speculation, or a guess that the defendant is guilty of the criminal act(s) he is charged with, then that is an insufficient basis for conviction.  Circumstances merely causing a suspicion of guilt are not sufficient to justify a conviction of crime.

Doc. 290 at 12.[2]  The government objected arguing that such an instruction would be repetitive because the court's jury instructions already included the Eleventh Circuit's pattern reasonable doubt instruction, which stated, "'[p]roof beyond a reasonable doubt' is proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs."  Doc. 290 at 5. The district court refused to give Peralta's additional instruction on the grounds

---

[2] "Doc. #" refers to the district court's numbered docket entry.

5

that it was covered by other instructions and was confusing.  The jury found

Peralta guilty and he was sentenced to 151 months' imprisonment.

This is Peralta's appeal.

## II.    LEGAL ANALYSIS

Peralta raises three arguments on appeal.  First, he contends that the district

court erred in failing to give his additional requested jury instruction.  Second, he

argues that the district court erred in denying his motion for a judgment of acquittal

because the government failed to establish, beyond a reasonable doubt, that Peralta

was guilty of conspiring with the co-defendants listed in the indictment, who were

members of the Pouncy gang.  Third, Peralta argues that the Middle District of

Alabama was an improper venue because he committed no crime there.  We

consider each argument in turn.

## A.    The District Court Did Not Err in Refusing to Give Peralta's Requested Jury Instruction.

We review the district court's refusal to give a proposed jury instruction for

an abuse of discretion.  *United States v. Dean*, 487 F.3d 840, 847 (11th Cir. 2007).

"District courts enjoy broad discretion in formulating jury instructions, so long as

the charge as a whole accurately reflects the law in the context of a case's facts."

*United States v. Isnadin*, 742 F.3d 1278, 1296 (11th Cir. 2014).  A district court

abuses its discretion in failing to give a requested instruction if (1) the requested

instruction was a correct statement of the law; (2) its subject matter was not

6

substantially covered by the charge actually given; and (3) its subject matter dealt with an issue in the trial court that was so important that the failure to give it seriously impaired the defendant's ability to defend himself. *United States v. Paradies*, 98 F.3d 1266, 1286 (11th Cir. 1996).

> Peralta requested a supplemental jury instruction that provided:

> If you believe the evidence in this case did nothing more than create a suspicion, a possibility, speculation, or a guess that the defendant is guilty of the criminal act(s) he is charged with, then that is an insufficient basis for conviction. Circumstances merely causing a suspicion of guilt are not sufficient to justify a conviction of crime.

Doc. 290 at 12. Peralta argues that the district court erred in failing to give this instruction because without it the court's charge to the jury "did not explain that speculation, suspicion, or a guess is an insufficient basis for conviction." Appellant's Brief at 17. The government concedes that Peralta's requested instruction was a correct statement of law but argues that it was already substantially covered by the court's instruction on reasonable doubt. We agree with the government.

Although the district court refused to give Peralta's requested instruction, it instructed the jury that it had to find Peralta guilty beyond a reasonable doubt, which it defined as "a real doubt based on your reason and common sense after you have carefully and impartially considered all of the evidence in the case." Doc. 290 at 5. The court further explained that "'[p]roof beyond a reasonable doubt' is

7

proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs." *Id.* Under the given instruction the jury was precluded from convicting Peralta based only on "suspicion, a possibility, speculation, or a guess." *Id.* at 12. The subject matter of Peralta's requested jury instruction was therefore substantially covered by the court's instruction on reasonable doubt. *Paradies*, 98 F.3d at 1286.

Thus, the district court did not abuse its discretion in denying Peralta's requested supplemental jury instruction.

**B.    The District Court Properly Denied the Motion for Judgment of Acquittal Because Sufficient Evidence Supported Peralta's Conviction.**

Peralta also argues that the district court erred in denying his motion for a judgment of acquittal because the district court failed to establish, beyond a reasonable doubt, that he was guilty of conspiring with the co-defendants listed in the indictment. He argues that he was arrested and charged after committing a crime in Georgia, and there was no evidence that he conspired with the Pouncy gang in Alabama. He further argued that he could not have conspired with a government agent, the UCE.

We review *de novo* the district court's denial of a judgment of acquittal on sufficiency-of-evidence grounds, considering the evidence in the light most favorable to the government and drawing all reasonable inferences as well as

8

credibility determinations in the government's favor. *United States v. Capers*, 708 F.3d 1286, 1296 (11th Cir. 2013). We may not overturn a jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.* at 1297 (internal quotation marks omitted). Circumstantial evidence may be used to establish an element of a crime, even if the jury could draw more than one reasonable inference from the circumstantial evidence. *United States v. Henry*, 920 F.2d 875, 877 (11th Cir. 1991). Applying this standard of review, we conclude that the evidence was sufficient to support Peralta's conviction.

To sustain a conviction for conspiracy with intent to distribute, the government must prove that an agreement existed between two or more persons to violate the narcotics laws, the defendant knew of the conspiratorial goal, and he knowingly joined or participated in the illegal venture. *United States v. Guerrero*, 935 F.2d 189, 192 (11th Cir. 1991). The existence of such an agreement may be proved by either direct or circumstantial evidence. *Id.* (citation and internal quotation marks omitted). The government does not have to prove that the alleged conspirator knew all of the details of the conspiracy or that he participated in every phase of the scheme. *United States v. Orr*, 825 F.2d 1537, 1543 (11th Cir. 1987). The government may establish a defendant's knowing participation in the conspiracy through proof of surrounding circumstances, such as acts committed by

9

the defendant that furthered the purpose of the conspiracy. *United States v. Iglesias*, 915 F.2d 1524, 1527 (11th Cir. 1990). Further, a common purpose and plan may be inferred from the circumstances. *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001).

Here, the government presented sufficient evidence to support Peralta's conviction. First, the government established at trial the existence of an agreement between Peralta and Rubalcava to distribute methamphetamine. Peralta worked with Rubalcava to distribute the drug, as evidenced by his coordination of and presence at the third controlled purchase by the UCE.[3] Peralta's direct participation in the third transaction was also evidence that he knew of the conspiratorial goals. Peralta's knowing participation in the conspiracy was further evidenced by circumstantial evidence presented at trial; specifically, the numerous wire transfers Peralta made to Mexico—where Rubalcava was based. Peralta transferred approximately $44,042.77 to Mexico in 55 money transfers—all under the threshold that triggers the requirement of additional identifying information for the sender. A jury could have inferred from the large sum of money he transferred that Peralta played a larger role in the conspiracy beyond the single transaction.

---

[3] Peralta argues that the UCE's identification of Peralta at the third purchase was unreliable, however, it is exclusively the jury's role to determine the credibility of witnesses. *See United States v. Clay*, 832 F.3d 1259, 1294 (11th Cir. 2016).

The government also established at trial that Rubalcava, who was based in Mexico, supplied the Pouncy gang with methamphetamine, which was picked up in Atlanta and then sold in Enterprise. Peralta's participation in the third transaction with the UCE was conducted in the same manner as the transactions involving the Pouncy gang. In fact, the code used by the UCE in one of the Atlanta transactions, "alazan," was the same code used by the Pouncy gang in one of their transactions. The government established that both the Pouncy gang and the UCE had ties to the confidential source, May, who was responsible for recruiting new methamphetamine buyers for Rubalcava. May had recruited both the Pouncy gang and the UCE. The UCE then, in one of his transactions, received the methamphetamine directly from Peralta.

A jury could have inferred from all of this information that Peralta and the Pouncy gang were all members of the same overall conspiracy to distribute methamphetamine. The government is not required to prove that Peralta knew all of the details of the conspiracy or all of its members or that he participated in every phase of the scheme. *See Orr*, 825 F.2d at 1543.

Accordingly, there was sufficient evidence to establish that Peralta knowingly engaged in acts that furthered the purpose of the overall conspiracy. *Id.* The district court thus did not err in denying Peralta's motion for judgment of acquittal.

## C.    The Middle District of Alabama Was a Proper Venue.

Having established that there was sufficient evidence of Peralta's conviction, we turn to his argument that the Middle District of Alabama was an improper venue for his criminal proceedings.  Here, Peralta again argues that he was not part of the Pouncy conspiracy and that he did not commit any illegal act in the Middle District of Alabama.  Therefore, he argues, venue was improper in the Middle District of Alabama.

The United States Constitution guarantees, in two places, that a criminal defendant has a right to be tried in a proper venue.  *United States v. Cabrales*, 524 U.S. 1, 6 (1998); *see* U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI. However, an offense that was "committed in more than one district" can be prosecuted "in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237.

In a conspiracy case, venue is proper in any district where an overt act was committed in furtherance of the conspiracy.  *United States v. Smith*, 918 F.2d 1551, 1557 (11th Cir. 1990).  The government must support its choice of venue by a preponderance of the evidence.  *Id.*  We review a challenge to venue in the light most favorable to the government, making all reasonable inferences and credibility choices in favor of the jury verdict when deciding whether the government has proved by a preponderance of the evidence that an offense occurred in the trial

12

district. *United States v. Burroughs*, 830 F.2d 1574, 1580 (11th Cir. 1987) (citation omitted). In a conspiracy case, the overt act need not be committed by the defendant for venue to be proper because the "acts of accomplices and unindicted co-conspirators can also expose the defendant to jurisdiction." *United States v. Matthews*, 168 F.3d 1234, 1246 (11th Cir. 1999), *opinion amended on denial of reh'g sub nom. United States v. Moore*, 181 F.3d 1205 (11th Cir. 1999). The fact that most of the conspiracy's activity took place in a venue other than the one chosen for trial does not destroy venue. *Id.*

As discussed above, the government presented at trial sufficient evidence that Peralta was a member of the conspiracy with Rubalcava to distribute methamphetamine, including by the Pouncy gang in Enterprise. Viewing all reasonable inferences and credibility choices in favor of the jury's verdict, we cannot say that no overt acts furthering the conspiracy occurred in the Middle District of Alabama. The evidence at trial established that members of the Pouncy gang coordinated with Rubalcava for the purchase of methamphetamine on at least two occasions. Members of the Pouncy gang picked up the methamphetamine in Atlanta that had been supplied by Rubalcava and then distributed it in Enterprise. Rubalcava also informed the UCE that he supplied drugs in Enterprise and made deliveries of methamphetamine in Atlanta.

Thus, as a member of the conspiracy, Peralta was exposed to jurisdiction where other conspirators were exposed to jurisdiction. *Matthews*, 168 F.3d at 1246. Accordingly, the Middle District of Alabama was not an improper venue.

## III.    CONCLUSION

For the above reasons, we affirm Peralta's conviction and sentence.

**AFFIRMED.**